The next case this morning is 523-0021, People v. Johnson. Arguing for the appellant is Elizabeth Boddy. Arguing for the appellee is Hiram Finjack. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. As you've been advised, Justice Moore is not present. He will, however, be viewing and listening to the recording of this oral argument, and remain a panel member and participate in the disposition. Appellant, you may proceed. Good morning. My name is Elizabeth Boddy from the State Appellant Defender's Office, and I represent the appellant, Mantia Johnson. There, I'd like to focus on the first two arguments, which concern the sufficiency of the evidence and trial counsel's ineffectiveness. This is an extraordinary case. Rarely does a police officer admit to conceiving and spoon-feeding a suspect a story, but that's what happened here when Clyde Leonard gave a statement implicating Mantia Johnson as the shooter. The jury, however, did not believe that story, and for good reason. It's not true. Over the course of several months, Clyde gave multiple statements to the police, and every statement was a lie. He lied about when he came into town. He lied about his whereabouts on the night of the shooting. He lied about who he was with, where his phone was, what kind of car he was in. He lied about his relationship with the Lovett family. He lied, and he lied, and he lied. And it wasn't until his attorney met with the state that Clyde stopped being dumb and got himself out of it. Detective Donahue's words, not mine. And came up with a story that seemingly made sense, that he was from Texas, wasn't involved, and was shocked when Mantia opened the sunroof and started firing. Clyde's story, however, doesn't make sense. And critically, it's refuted by the surveillance videos. Where the men were seated inside the Dodge during the time of the shooting is critical because the shooter was sitting in the front passenger seat. We know from the surveillance videos that Clyde and Larry left the bowling alley together around 12, and together they drove to East St. Louis, where they switched cars. And together, those two men followed Ahmaud's girlfriend to a gas station, where she purchased drugs. And then they picked up Mantia at about 12.50, and Mantia got in the back seat. Now, it was Detective Donahue who put the idea in Clyde's mind that they switched seats. Because Detective Donahue obviously found a flaw in Clyde's story. How could Mantia have been a shooter if he was sitting in the back seat? So Clyde said, well, we switched seats at the stop and go, at the step and go. We have the surveillance video from that gas station. They didn't switch seats. That surveillance video shows a man exit the rear passenger door. That man is wearing shorts. Only Mantia was wearing shorts at night, so that man was Mantia. Mantia then bent down, presumably to fill the tires with air. And then he walked around the back of the car, went to the other side where he's out of view. And then a figure comes back. And there's a moment where that figure's standing behind the Dodge Durango. The brake lights are illuminated. The figure turns slightly, and you can see he's wearing shorts. And that figure is Mantia, and he got back in the rear driver's side door. So Mantia and Clyde never switched seats. It was Clyde in the front seat of the car. It was Clyde who was a shooter. And this makes sense because Clyde, not Mantia, was the one with the motive to kill Ahmad. Ahmad's death was the result of—it was in retaliation for the death of Jermaine Lovett. There was apparently a family feud between the Lovetts and some other family. And the Lovetts thought Ahmad was involved. Clyde was family with the Lovetts. He married a Lovett. He had children with her. He was close with Larry. He was close with Jermaine. He was close with Jermaine's mother. He was so close with her that he frequently stayed with her and stayed with her the night before the shooting. Mantia, in contrast, was actually friends with Ahmad. He didn't have a motive to kill him. It was Clyde who had the motive to kill him. It was Clyde who was in the front seat. Clyde lied to save himself. And he saved himself by giving this statement, he pled guilty to obstruction of justice and walked. So given all these flaws in Clyde's testimony, his motive, the lies, the benefit he received, the fact that the surveillance video refutes what he said, it's not surprising the jury didn't believe him. As the jury found, when Clyde's testimony is taken with great suspicion, it's too improbable and unsatisfactory to support proof beyond a reasonable doubt that Mantia was the principal offender. So the only way this court can affirm Mantia's conviction is if it finds that the state proved beyond a reasonable doubt that Mantia was accountable for Clyde's and Larry's conduct. I acknowledge that the state's evidence establishes Mantia's presence in the Dodgers arena at the time of the shooting, but that's all it establishes. The state's theory of accountability was that Mantia facilitated the crimes by calling Larry to alert him of Ahmad's presence in Granite City, and then by calling D'Angelo to ascertain Ahmad's location so that men could follow him and shoot him. The state's theory, though, is based on nothing but speculation because the state never established that those calls connected, much less that the men discussed doing anything to Ahmad. The fact that some of Mantia's calls to D'Angelo were separated by two seconds suggests that those calls didn't even connect. Regardless, if they did, the state never proved the content of the calls. It intended on calling D'Angelo to testify to the content of the calls, but it never called him. So no one testified as to what, if anything, the men said during those calls. It is very easy to speculate that the calls were made to facilitate the murder, but it's just as easy to conclude that they were made for another reason. Mantia could have been calling Larry to find out when he was picking him up. Mantia could have been calling his cousin D'Angelo for a number of reasons, where they were going to sleep that night. Maybe he wanted more drugs. And there was also this extraordinary event of Ahmad's near-fatal overdose that certainly would have been something everyone would have been talking about because Mantia had been there earlier. They were all doing drugs at Nicholas's house. The fact that someone overdosed is an extraordinary event that they would have been talking about because it would have been a concern that the drugs they all purchased that night were tainted. We don't know why the calls were placed because the state never proved it. The state cannot fill in gaps with guesswork. A conviction cannot be based on conjecture. Our system of justice requires more. It requires proof beyond reasonable doubt. And the only thing the state proved here is that Mantia was inside that car at the time of the shooting. And we, unlike lay jurors, know that mere presence is not enough. So this is an extraordinary case where the state's evidence simply is insufficient. And because the state's evidence is insufficient, I ask under Argument 1 that we reverse Mantia's conviction outright. Alternatively, this court can reverse his conviction and remand the cause for a new trial upon finding that trial counsel was ineffective for not asking the judge to reconsider his ruling barring evidence of Ahmad's overdose. The state's theory of case originally was that Mantia was the principal. So the content of these calls really wasn't important to that theory of case. But the state switched theories at the end of the case and argued accountability. That's when the calls became critical because we know the state's entire accountability case hinged on these calls. There were so many possible explanations for the calls, as I just mentioned, that it became incumbent upon defense counsel to give the jury an alternative explanation for those calls with available evidence. And counsel had available evidence. It was Ahmad's near-fetal overdose. The state suggests that based on the timing of the calls, the calls couldn't have been about Ahmad's overdose. Simply not true. We know that Ahmad arrived at Nicholas's residence around 12 a.m. and left at 1.24. Mantia's calls started at 12.07 and ended at about 1.07. So the timing doesn't preclude the possibility that the calls were about Ahmad's overdose. And as I said previously, an overdose is a huge deal among drug dealers. I mean, there could have been a very legitimate concern that the drugs they purchased from Nicholas that night were tainted or laced with fentanyl, which could have caused Ahmad to overdose. This is an extraordinary event that people would have been talking about. And counsel knew that those calls could explain—that he knew that the overdose could have explained those calls. And once the state indicated its intent to argue accountability, reasonable counsel would have asked the trial judge to reconsider his ruling. The judge said he would reconsider his ruling if something changed at trial. Something changed at trial when the state pivoted and started arguing accountability. This was a closed case. We know the jury didn't believe everything Clyde said. We know that the state's accountability theory is based on speculation. So had the jury heard this alternative explanation for the calls, there is a reasonable probability that it would have voted to acquit Mantia. Therefore, counsel's failure to ask the judge to reconsider its ruling constitutes ineffective assistance to counsel. And if this court does not reverse Mantia's conviction outright, then it should reverse his conviction due to trial counsel's ineffectiveness and remand the cause for a new trial. Any questions, Justice Fung? No questions. Thank you. Appley? Thank you, Your Honors. My name is Hiram Fungiak. I'm representing the state in this case. With respect to the defendant's argument that the evidence was insufficient to support his guilt as the principal, although accomplice testimony must be viewed as caution, it can be sufficient to sustain a conviction. Here was the jury's role to assess Clyde Leonard's credibility. A hypothetical reasonable jury could have found Leonard's testimony credible and convicted the defendant as the principal, although this particular jury did not. Leonard's account of the events of that night were largely corroborated by cell phone records and video evidence, and although the defendant continues to insist that the gas station surveillance footage taken shortly before the shooting proves that Leonard lied about switching seats with the defendant, the poor quality of the video makes it impossible to conclusively determine whether, in fact, Leonard and the defendant switched seats. Again, while this jury did not believe Leonard's testimony was sufficient to prove the defendant was the shooter, a hypothetical reasonable jury could have. Turning to the defendant's argument that the evidence was insufficient to prove his guilt by accountability, here there was abundant circumstantial evidence demonstrating the defendant's intent to facilitate and aid in the victim's murder. The defendant was at Nicholas Samuel's trailer with his cousin D'Angelo Enloe when he learned the victim would soon be arriving. Upon hearing this, the defendant almost immediately departed and shortly thereafter called Larry Lovett. Following this initial call, Lovett began immediately heading to retrieve the vehicle later used in the shooting. During this time frame, the defendant made numerous calls to Enloe, who was still with the victim. Strong evidence that the defendant was feeding Lovett updates on the victim's location to coordinate the impending attack. Cell phone records tracked the defendant meeting up with Lovett, traveling together to Samuel's residence, where the defendant still was, and waiting for the victim to depart. Surveillance videos also captured their vehicle tailing the victim just before he was gunned down. Furthermore, after the shooting, the defendant fled with the co-defendants and never reported the crime. The defendant's own stepmother, in a statement to the police shortly after the murder, identified him as driving the suspect vehicle the day after the murder at her apartment. Where the defendant would often stay. He also stashed the clothing he wore during the shooting at his parents' apartment. There is no plausible innocent explanation for the defendant's suspicious departure from Samuel's trailer, his phone calls, and his movements that night. The defendant's speculative alternative explanations for the calls do not negate the strong circumstantial evidence of his guilt. Given that evidence, the idea that the defendant was merely present in the shooter's car by happenstance defies all reason. A rational jury could have reasonably concluded that the defendant was guilty by accountability. In terms of the defendant's ineffective assistance of counsel claim, the defendant has not shown that trial counsel's performance fell below an objective standard of reasonableness. Counsel's decision not to renew the motion to admit the victim's drug overdose was a matter of trial strategy deserving deference. The phone records were always central to the state's case under both principle and accountability theories of guilt, and the trial court knew this when it denied the original motion. Although the state did not ultimately call Enloe to testify about the content of the defendant's calls as it suggested it might when arguing against the initial motion, this did not significantly change the evidentiary picture. Without, even without Enloe's testimony, the timing, pattern, and circumstances of the calls were sufficient to establish the defendant's culpability with or without Enloe specifying what was said. The trial court was fully aware that the calls were a critical part of the evidence, yet still denied the motion. There is no reason to believe it. The court would have reversed course because Enloe did not testify as the state's theory remained essentially the same, that the calls were an integral part of proving the defendant's guilt. Counsel reasonably chose to focus on challenging the reliability of the state's evidence, placing the defendant at various locations throughout that night, including Samuel's trailer, rather than speculate about the content of the phone calls, arguing both theory risks confusing the jury. Furthermore, the defendant has not shown prejudice, a reasonable probability that the outcome would have been different, but for counsel's alleged error, first of all, it is unlikely that the trial court would have reversed its earlier ruling, even if the counsel had renewed the motion. Additionally, hearing about the overdose was unlikely to change the jury's verdict, given the overwhelming circumstantial evidence of the defendant's guilt. Therefore, because the defendant has neither shown deficient performance on the part of counsel or prejudice, his claim of ineffective assistance of counsel should be rejected. Additionally, because the evidence was sufficient for a reasonable jury to have concluded that the defendant was guilty, either under either principle or accountability theories, the jury's verdict should be affirmed. Thank you, your honors. Any questions, Justice Fung? No questions. Thank you. Rebuttal. There is no corroboration as to who committed the crime. That lives and dies on the testimony of Clyde Leonard and Clyde Leonard alone. As to the surveillance video, I agree that the surveillance video is grainy, but I urge you to play it, and you might have to play it multiple times, play it on a big, high quality screen, and pause it at the right moment, and you will see that the man who enters the backseat is wearing shorts, and only one man was wearing shorts that night, and it's Mantia. He got in the backseat. Clyde lied, and he lied to save himself. As to accountability, the fact that he left the scene, like, he didn't flee the scene, first of all. He was in a car in which someone inside that car shot at someone. So it's not like Mantia fled the scene by himself. He was in a car, and together they left. He had no option but to continue driving with these men. And the Illinois Supreme Court and this court has said that flight from scene, even when coupled with knowledge of the commission of a crime and mere presence, isn't enough to prove someone accountable. And that's all the state proved here is that he was accountable. The fact, I take issue with the description that Mantia stashed his clothing at his parents' house. He kept his clothing there, and he stayed there regularly. So the fact that he changed clothes isn't indicative of his guilt. As to counsel's ineffectiveness, counsel, the state first argued that Mantia was guilty as a principal. It was not until rebuttal argument that the state argued that Mantia was guilty as an accomplice. So for the state to say that this was counsel's strategy to argue that the phone didn't connect or that he didn't make the phone calls, it really didn't become an issue until rebuttal argument. And counsel was deprived of the opportunity to argue accountability because the state waited until rebuttal argument to argue it. But the point is, the state asked for accountability instructions on the second to last day of  And at that moment, counsel should have realized that the calls were important. And the calls weren't, the content of the calls were not important to the state's theory that Mantia was a principal. And the state doesn't use them to argue and didn't use them to argue that he was guilty as a principal, not the content of the calls. The content of the calls became important when the state was arguing accountability. And the state's entire accountability case hinges on the content of those calls. We don't know the content of the calls because the state never proved it. And the state cannot rely on speculation to say, well, they were about, they were to facilitate the murder. We don't know what they were about because the state never proved that they even connected. We don't even know if Mantia made the calls. We know they came from his phone. We don't know that he was the one who made the phone calls. So, the state's entire accountability case is based on speculation. And speculation is not enough to prove someone guilty beyond a reasonable doubt. So, for these reasons, I ask that this court either reverse Mantia's conviction outright or reverse the cause and remand the cause for a new trial due to counsel's ineffectiveness. Any questions, Justice Fung? No questions, thank you. All right. Thank you, counsel. We will take the matter under advisement and issue a ruling in due course.